**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A. (a minor),<br>by Crystal Ayers,<br><br>          Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV07-1060-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

## I. BACKGROUND

Currently before the Court is Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, both filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. After careful consideration of the motions and the arguments set forth therein, the Court finds the following.

**A. Procedural History**

On January 26, 2004, the claimant's mother, Crystal Ayers filed an application for supplemental security income (SSI) on behalf of claimant "A.,"[1] a minor. (R. at 16.) The application was denied initially on February 5, 2004 and upon reconsideration, denied again on August 3, 2004. (R. at 16.) Following a hearing on January 18, 2006, an Administrative Law Judge ("ALJ") found that A. had the following severe impairments: speech delays, difficulty

---

[1] Ms. Ayers' daughter will be referred to as "A." throughout this order as she is a minor.

with communicating, and depression. (R. at 19.) However, the ALJ affirmed the denial of the benefits, finding that A. did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, discussed in 20 C.F.R. pt. 404, app. 1 subpt. P, "Listings." (*Id*.) The ALJ also found that A.'s impairment did not "functionally equal" the level of impairment established by the regulation (20 C.F.R. § 416.926a) for determining functional equivalence in children. (R. at 19.) Plaintiff filed the instant Motion for Summary Judgment to appeal the ALJ's decision to this Court. (Doc. 22.) Defendant thereafter filed a Cross-Motion for Summary Judgment. (Doc. 23.) The motions are briefed and ready for disposition.[2]

## B. Relevant Background Regarding ALJ's Decision

### 1. Records and Reports from Medical, Psychological, and School Sources

A.'s kindergarten teacher, Lisa Parker, prepared an evaluation for the Plaintiff, observing that A. was "difficult to understand when she speaks." (R. at 92.) A. was evaluated on January 15, 2005 at St. Joseph's Hospital and Medical Center's outpatient speech-language clinic by Jennifer Vonalmen, MS, CCC-SLP. (R. at 148-150.) Ms. Vonalmen concluded that A. suffered from "severe articulation delay." (*Id*.) Although A.'s receptive and expressive language skills were age appropriate, she recommended speech therapy both at school and St. Joseph's Medical Center. (*Id*.)

Even after two months as her teacher, Charles Scholer, another kindergarten teacher, reported that he had experienced significant difficulty understanding A. on the first attempt. (R. at 155.) Two months later, Mr. Scholer recommended speech therapy for the Plaintiff. (R. at 40.) He noted that A. appeared to have difficulty communicating in ways that either the teacher or even A. herself could understand. (*Id*.) As a consequence of her impairment, she was incapable of properly articulating sounds to correctly read as is necessary to decode words."

---

[2] No reply by Plaintiff has been submitted in response to Defendant's Cross Motion for Summary Judgment. Plaintiff filed a stipulation to the Summary Judgment Schedule on July 1, 2008 requesting the deadline for filing Plaintiff's Reply be extended from July 1, 2008 to August 19, 2008. Stipulation was denied.

(*Id.*)  He also remarked that her speech difficulties and hesitance to speak in large groups or in front of others were a direct cause of harassment from other students.  (*Id.*)

Debbie Wise Duff, M.A., CCC-SLP, referred to Ms. Vonalmen's reports and concluded that A.'s impairment was "severe, but does not meet, medically equal, or functionally equal the Listings."  (R. at 159.)  Ms. Duff also used the teacher questionnaires and Ms. Vonalmen's reports to conclude that the Plaintiff's limitations in acquiring and using information were less than marked and her limitations in interacting and relating with others were marked.  Ms. Duff found no other limitations.  (R. at 161.)

Carl Mansfield, Ph.D., conducted a mental status examination of A.  He described no significant limitations in or impairment of A.'s abilities to acquire and use information, attend to and complete tasks, interact with and relate to others, move about and manipulate objects, or care for herself. (R. at 180.)  DDS[3] medical and psychological consultants Dr. Kirschner and Dr. Bettis also concluded from Ms. Vonalmen and Dr. Mansfield's assessments that A.'s impairment did not meet, medically equal, or functionally equal the Listings."  (R. at 181.)

A.'s second grade report cards from the first and second semesters show unsatisfactory levels in reading with fluency and expression, reading with understanding, applying phonetic skills, applying appropriate writing mechanics, learning assigned words, and applying phonetic skills when writing.  (R. at 93,136.)  She continued to demonstrate the need for improvement in mathematics, expressing complete thoughts, and proper letter formation.  (*Id.*)   A.'s second grade teacher, Ms. Rodriquez, completed a Teacher Questionnaire wherein she identified "serious" and "very serious" problems in A.'s ability to acquire and use information, and attend and complete tasks. (R. at 108-109.)  She also noted in the questionnaire that A. was "very low and below grade level in ALL subject areas [and] Retention will be necessary for her."  (R. at 108.)

---

[3] Disability Determination Service.

A. took a Star Reading computer-adaptive reading test on October 6, 2005, where she scored a percentile rank of 1, significantly below the national average of other students in the same grade. (R. at 94.)

On February 3, 2006, A. underwent speech evaluation by Deanna Decker, MA-CCC/ SLP-L. (R. at 135.) A. scored "two standard deviations below the normal average range," qualifying her to receive speech therapy services. (*Id.*) However, Ms. Decker considered her prognosis "excellent given the numerous articulation errors that have already remediated themselves [sic] in two years." (*Id.*)

One month later, Paula Eldridge, Ph.D., conducted a psychoeducational evaluation. (R. at 132.) The test revealed significant discrepancies in reading, numerical operations, and written expression. (*Id.*) Dr. Eldridge noted that A. had "made several gains," but still recommended speech therapy. (R. at 132-133.)

### 2. Reports from Plaintiff's Mother During Administration of the Claim

The Plaintiff's mother, Ms. Ayers completed a Function Report and Disability Report in early 2004 detailing A.'s impairment and limitations (R. at 60-68) and describing A.'s difficulty communicating and A.'s resulting frustration (R. at 69-75).

In the Disability Report-Appeal that Ms. Ayers completed three years later, she stated that A.'s speech had not changed since she was three years old and it limited her ability to carry on a normal conversation. (R. at 78.) The effect of A.'s limitation was both emotional and psychological; A. became depressed as she found herself unable to properly communicate even with family members. (R. at 84.)

### 3. January 18, 2006, ALJ Hearing Testimony

The Plaintiff was nine years old at the time of the hearing in front of the ALJ. After initially not responding verbally to any questions, A.'s responses eventually consisted of making sounds and shaking her head. (R. at 255-258.) Finally the ALJ convinced the Plaintiff to become more receptive to the questioning and A. stated that children picked on her at school. (R. at 259.)

4

Ms. Ayers told the ALJ that it was difficult to get the Plaintiff to go to school and she would often come home crying. (R. at 260-261.) When the ALJ indicated that he had heard a lot about A.'s school problems, but wanted to hear more about significant medical issues, Ms. Ayers continued to repeat that speech and communication were significant problems for her daughter. (R. at 261-267.)

The Plaintiff's attorney and the ALJ then discussed the various tests administered to the Plaintiff and the academic reports involving A. The ALJ expressed concern for the lack of substantiated findings indicating the presence of a medical disorder in the evaluations. (R. at 267-269.) Plaintiff's attorney then drew attention to various teacher evaluations, highlighting reports of A.'s speech articulation disorder and her difficulty communicating. (R. at 270-275.) Plaintiff's attorney notified the ALJ of a scheduled Special Education Evaluation in the near future. (R. at 278.) The ALJ indicated his hesitation to make a premature decision and his willingness to keep the record open and receive further memoranda or hold a supplemental hearing when more information became available. (R. at 278-280.)

**4. ALJ's Decision**

The ALJ determined that A.'s speech delays, difficulty with communicating, and depression were severe. (R. at 19.) Despite the severity, the ALJ found that A.'s impairment did not meet, medically equal, or functionally equal one of the Listings discussed in 20 C.F.R. Part 404, Subpart P, Appendix I. (*Id*.) An impairment functionally equals that of an impairment in the Listings if it causes "marked" limitations in two of the six domains or "extreme" limitations in one of the six domains. 20 C.F.R. § 416.926a(d).

In the evaluation of functional equivalence, the ALJ determined that although the alleged symptoms were reasonable, the statements concerning the intensity, duration, and limiting effects of A.'s symptoms were not entirely credible because a later evaluation showed that she had since made progress. (R. at 19.)

The ALJ concluded that A.'s limitation in the domain of "acquiring and using information" was "less than marked." (R. at 20.) In making this finding the ALJ considered the

5

evaluation of A.'s second grade teacher who indicated that A. had difficulty understanding school and content vocabulary and reading comprehension, but that the child worked well with one to one instructions, did not ask for a lot of help, and completed her assignments. (*Id.*)

A.'s limitation in the domain of "attending and completing tasks" was found by the ALJ to be "mild." (R. at 20-21.) The ALJ concluded that because A.'s teacher indicated no problems in this domain and the child's abilities appeared to be age appropriate, the limitation was "mild."

The ALJ further concluded that A.'s limitation in the domain of "interacting and relating with others" was "less than marked." (R. at 21.) Thus the ALJ concluded that A. can make her wants and needs known to those that take care of her on a regular basis despite any speech errors that were not age appropriate. (R. at 33.)

## II. STANDARD OF REVIEW

### A. Standard for ALJ's Decision

When deciding a Social Security appeal, the decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. *See Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing factual determinations by the Commissioner, acting through the Administrative Law Judge, this Court affirms if substantial evidence supports the determinations. *See Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion when the entire record is considered. *Howard*, 341 F.3d at 1011; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1193; *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for

6

determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *See Benton*, 331 F.3d at 1040; *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *See Edlund*, 253 F.3d at 1156; *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### B. Standard for Determining Child Disability

Under the authority of the Social Security Act, the Social Security Administration has established an evaluation process to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a). A child is considered "disabled" if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). In order to establish that the Plaintiff has an impairment, the plaintiff must provide medical evidence to support their claims. 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 416.928 ("Your statements (or those of another person) alone, however, are not enough to establish that there is a physical or mental impairment."). "Signs must be shown by medically acceptable clinical diagnostic techniques. . . . They must also be shown by observable facts that can be medically described and evaluated." (*Id.*) "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques." (*Id.*) A child claimant must show that (1) he or she is not working, (2) he or she has a medically determinable "severe" impairment or combination of impairments, and (3) his or her impairment(s) causes marked and severe functional limitations. 20 C.F.R. § 416.924(b-d).

A medical impairment or combination of impairments causes marked and severe functional limitations if it meets or medically equals the severity of a set criteria for an impairment, or functionally equals an impairment in the Listings. 20 C.F.R. § 416.924(d). The

Listings establish six domains for determining functional equivalence: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment functionally equals that of a listed impairment if it causes "marked" limitations in two of the six domains, or "extreme" limitations in one of the six domains. 20 C.F.R. § 416.926a(d).

A limitation is "marked" if it seriously impacts a child's ability to initiate, sustain, or complete activities on a daily basis. 20 C.F.R. § 416.92a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." (*Id.*) A child has a "marked" limitation if the child attains a valid score on a comprehensive test designed to measure ability or functioning that is between two and three standard deviations below the mean and her day-to-day functioning is consistent with that score. 20 C.F.R. § 416.92a(e)(2)(iii). A limitation is "extreme," if it very seriously interferes with her ability to initiate, sustain, or complete activities on a daily basis. An "extreme" limitation is "more than marked," but "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i). A child has a "marked" limitation if the child attains a valid score on a comprehensive test designed to measure ability or functioning that is more than three standard deviations below the mean and her day-to-day functioning is consistent with that score. 20 C.F.R. § 416.92a(e)(3)(iii).

### III. DISCUSSION

The Plaintiff argues that the final decision of the Commissioner of the Social Security Administration denying the Plaintiff's application for disabled Child's Supplemental Security Income was not supported by substantial evidence and failed to apply the proper legal standard. After careful consideration of the motions and the arguments set forth therein, the Court denies the Plaintiff's motion for summary judgment.

As long as there is substantial evidence supporting the ALJ's decision and the decision was not based upon incorrect legal standards, this Court must affirm the decision of the ALJ.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). This Court finds that the ALJ's evaluation was based on substantial evidence and upon the correct legal standard for determining functional equivalence.

### A. Lack of Substantial Evidence

Plaintiff argues that the final decision of the Commissioner of the Social Security Administration denying the Plaintiff's application for disabled Child's Supplemental Security Income was not supported by substantial evidence. Plaintiff specifically contends that the ALJ failed to use substantial evidence to determine whether A. had an impairment or combination of impairments that (1) meets or medically equals one of the impairments in the Listings, and (2) functionally equals the Listings.

#### 1. Evaluation of Listing or Medical Equivalence

Plaintiff argues that the ALJ erroneously concluded that A.'s impairments did not meet the criteria in relevant sections of the Listings. (R. at 19.) Plaintiff also argues that the ALJ failed to consult with a qualified medical or psychological expert advisor and provided no explanation why, or from what evidence, he concluded that A.'s severe articulation delay did not meet the criteria in Section 2.09, relating specifically to speech articulation disorders. Further the plaintiff argues that certain aspects of evidence that would have established A.'s impairment as a Listing or medical equivalent to a Listing were ignored or overlooked.

The Court agrees that the ALJ is obligated to articulate some minimal level of reasoning to justify its findings if there is discrepancy between the Plaintiff's allegations and the ALJ's decision. See also *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Although the ALJ must set forth the substantial evidence being considered to justify his decision, it does not necessarily have to articulate each minute detail in his "Findings." *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) ("*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading Finding") citing *Marcia v.*

*Sullivan*, 900 F.2d 172 (9th Cir. 1990). Further, it is the Plaintiff's burden to establish the impairment as meeting or medically equivalent to a Listing through medical evidence. 20 C.F.R. 416.908 ("Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms"); *Sullivan v. Zebley*, 493 U.S. 521, 530, 100 S. Ct. 885, 891, 107 L. Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.").

The Plaintiff failed to provide relevant medical evidence which would show that the impairment met or was medically equal to a listing. Despite the Plaintiff's failure to meet the specified medical criteria, the Court finds that the ALJ considered, in its totality, all medical and academic evidence provided when evaluating the impairment. Although A. demonstrated early articulation issues, the Plaintiff also showed significant improvement once she began speech therapy. (R. at 19.) These improvements and optimistic prognosis combined with less than marked ratings led the ALJ to make his ultimate decision to deny disability benefits. (Id.) Further, the record contains substantial evidence from medical examiners affirming the ALJ's findings. Because the same evidentiary conclusions can be applied toward evaluating medical equivalence and functional equivalence, it follows that the impairment did not meet and was not medically equal to a listing.

For these reasons, the Court finds that although the ALJ does not specifically justify his conclusions under the particular section in question, the ALJ has articulated his reasons for his decision based on substantial evidence. This Court cannot exercise its discretion to remand further administrative proceedings on the basis of the decision's format and organization. Further, the ALJ's failure to articulate any specific reasoning in his decision regarding medical equivalence would not have been sufficient to prove the Plaintiff was disabled because the Plaintiff failed to provide the necessary medical evidence to initially evaluate its claim.

**2. Evaluation of Functional Equivalence**

In the decision dated June 14, 2006, the ALJ states that although A.'s impairments could reasonably be expected to produce the alleged symptoms, the opinion evidence was not entirely credible. (R. at 19.) The Plaintiff contends that the ALJ failed to provide comments about, explanations of, or specific findings regarding the credibility of Crystal Ayers' descriptions of A.'s speech articulation disorder or depression. Plaintiff also argues that the ALJ failed to consult with a qualified medical or psychological expert advisor and provided no explanation why, or from what evidence he concluded that A. had less than marked limitations in her ability to acquire and use information and in her ability to interact with and relate to others. The Court disagrees.

For the ALJ to reject Plaintiff's subjective complaints, the Court agrees that the ALJ must provide justification for his decision. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)("specific, cogent reasons for the disbelief"). However, it is the sole responsibility of the ALJ to determine credibility and resolve ambiguities; when the evidence is susceptible to more than one rational interpretation, and one is provided, the ALJ's conclusion must be upheld. *Tackett*, 180 F.3d at 1098 (when evidence reasonably supports confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The purpose of the requirement is to prevent the ALJ from arbitrarily dismissing complaints. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-6 (9th Cir. 1991) (en banc) ("[a] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of the claimant's allegations").

Here, the ALJ considered reports from A.'s teachers, mother, and a speech evaluation. (Id.) The ALJ notes that despite testimonies regarding the magnitude of the impairment, A. has since made progress, as evidenced by her testing and prognosis. (Id.) At the hearing on January 18, 2006, the ALJ explained his preference for teacher evaluations because of their daily

11

observations of the child in question as opposed to a "one time...ten-minute session with a doctor." (R. at 276.) Nevertheless, the ALJ discussed the pediatric psychological evaluation of Dr. Mansfield during the hearing, wherein the doctor failed to note any mental impairments. (R. at 271.)

After careful consideration, the Court finds that the ALJ properly evaluated the testimony of the Plaintiff's mother as well as the reports from the teachers and speech evaluation. The Court is assured by the ALJ's explicit findings that he considered Plaintiff's testimony and did not arbitrarily dismiss Ms. Ayers complaints, nor did the ALJ dismiss significant medical evidence in making his decision. In determining that the opinion evidence was not entirely credible, the ALJ reviewed evaluations that showed A.'s marked improvements. (R. at 19). The ALJ also specifically referred to medical reports and the speech evaluation. (*Id*.) For these reasons, the Court find that the ALJ fully considered the entire evidence of the record before him.

## B. Legal Standard

Plaintiff argues that the ALJ failed to apply the proper legal standard in his final decision. If the Court finds that the ALJ's decision is not based on substantial evidence or fails to apply the appropriate legal standard, the Court should set aside the denial of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

### 1. Evaluation of Listing or Medical Equivalence

Plaintiff argues that the ALJ erred in determining that A.'s impairments did not meet and were not medically equivalent to any of the Listings. Plaintiff argues that the ALJ failed to mention which childhood Listing sections were used and failed to evaluate A.'s speech deficits under the adult Listing sections. Plaintiff also argues that the ALJ failed to consider any combination of A.'s speech impairment disorder and low IQ scores to meet the criteria in the Listings.

12

To establish that a plaintiff has an impairment, the plaintiff must provide medical evidence to support their claims. 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.") To determine that the impairment medically equals a listing, the ALJ will consider evidence from the case record and designated medical or psychological consultants. 20 C.F.R. § 416.926 (When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. . . . We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.).

The ALJ may use adult listings to evaluate disability if they find that the impairment would affect children and adults in the same way. 20 C.F.R. § 416.925 (b)(1) ("We may also use part A for individuals who are under age 18 if the disease processes have a similar effect on adults and children.") (emphasis added); 20 C.F.R. § 416.925 (b)(2)(i) ("In evaluating disability for a person under age 18, we use part B first. If the criteria in part B do not apply, we may use the criteria in part A when those criteria give appropriate consideration to the effects of the impairment(s) in children") (emphasis added). However, if it is reasonable to not apply the adult standards when evaluating the disability of a child, the court may not remand the ALJ's decision. *Tackett*, 180 F.3d at 1098 (when evidence reasonably supports confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ). The ALJ is not obligated to discuss the combined effects of A.'s impairments or compare them to any listing, if the Plaintiff fails to provide a theory regarding why the combined impairments meet or medically equal a listed impairment. *Lewis*, 236 F.3d at 514 (holding that the ALJ did not err in concluding the Plaintiff's conditions did not equal a listed impairment because the Plaintiff fails to provide evidence to the contrary); *compare with Lester*, 81 F.3d at 828 ("the Commissioner is required to take into account the combined effect of a claimant's physical and mental impairments in determining whether his condition equals this listing"), *Marcia*, 900 F.2d at 172 (holding that

*Marcia*'s medical evidence was equal to a listed impairment because the Plaintiff provided sufficient medical evidence).

Here, Plaintiff argues that the impairment should be found to meet or medically equal the Listing despite A. having normal hearing because the effects of the impairment should be combined with A.'s low IQ scores. Although the Plaintiff provides some evidence diagnosing A.'s speech articulation disorder and low performance in perceptual reasoning on the Wechsler IQ series, the Plaintiff fails to provide the necessary significant medical evidence or theory to establish that A.'s impairment would meet or medically equal an impairment in the listing. The ALJ provided the Plaintiff with adequate time to submit medical evidence after drawing attention to the record's lack of medical evidence in support of the Plaintiff's claims. (R. at 278-280.) Having failed to do so, the ALJ was forced to make his decision without additional medical evidence. It is reasonable that the ALJ did not apply the adult listings after finding that the impairment did not meet or medical equal the children's Listings. The ALJ is not required to look at the adult listings for a child unless it finds that the impairment would affect children and adults in the same way. It is only appropriate to consider the adult Listings for a child's impairment if the requirements are sufficiently met and the plaintiff provides the necessary evidence.

For the reasons above, the Court finds that this is a rational interpretation of the evidence and the Court finds that the ALJ applied the proper legal standard to determine if A.'s impairments met or were medically equivalent to any of the Listings.

**2. Evaluation of Functional Equivalence**

Plaintiff argues that the ALJ failed to apply the appropriate legal standard in determining the functional equivalence of the impairment because the ALJ is not specific and merely assigned severity ratings to the "domains" of functioning.

The Social Security Administration states that the appropriate legal standard for determining functional equivalence is to assign severity ratings to the functional domains. 20

C.F.R. § 416.926a(a) ( "By 'functionally equal the listings,' we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section"). Determining functional equivalence does not require the use of domains. 20 C.F.R. § 416.925 (b)(2)(ii) ("We will decide that your impairment is a 'listing-level severity' even if it does not result in marked limitations in two domains of function, or an extreme limitation in one, if the listing that we apply does not require such limitations to establish that an impairment(s) is disabling"). However, the ALJ may use these "domains" to determine functional equivalence for disability as they are intended to include the entire scope of functionality. 20 C.F.R. § 416.926a(b)(1) ("We will consider how you function in your activities in terms of six domains. These domains are broad areas of functioning intended to capture all of what a child can or cannot do") (emphasis added).

Here, the ALJ assigned severity ratings to the domains to determine functional equivalence in accordance with the legal standards. Although other methods for determining functional equivalence would have been acceptable, the Court finds the ALJ properly used the prescribed domains to determine that A.'s impairment was not functionally equal to the impairments in the Listings discussed in 20 C.F.R. pt. 404, app. 1 subpt. P.

## IV. CONCLUSION

For the reasons stated herein the Court concludes that the ALJ did not err in his disability determination. The ALJ presented the Plaintiff with the opportunity to perfect her claim but the evidence demonstrates that the Plaintiff did not submit sufficient evidence to show that the ALJ erred in his determination.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Ayer's Motion for Summary Judgment (Doc. 22) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion for Summary Judgment (Doc. 23) is **GRANTED** and **JUDGMENT IS ENTERED IN FAVOR OF THE COMMISSIONER AND AGAINST** Plaintiff Ayers.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**DATED** this 5th day of August, 2008.

_____
Stephen M. McNamee
United States District Judge